JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michelle States | Life Insurance Company of North America |

(b) County of Residence of First Listed Plaintiff    Essex
    *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
    *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Sara Kaplan-Khodorovsky
45 Eisenhower Drive, Suite 280
Paramus, NJ 07652 / 201-444-4493

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☒ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
ERISA, 29 U.S.C. 1132(a)(1)(B)

Brief description of cause:
Lawsuit for unlawful denial of Long Term Disability benefits

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE: 02/26/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

The Law Offices of Barbara B. Comerford, P.A.
45 Eisenhower Drive, Suite 280
Paramus, New Jersey 07652
Telephone: 201-485-8806
Fax: 201-485-7014
**Attorneys for Plaintiff Michelle States**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE STATES : | |
| Plaintiff, : | Civil Action No. |
| : | |
| vs. : | COMPLAINT |
| : | |
| LIFE INSURANCE COMPANY OF : | |
| NORTH AMERICA, : | |
| : | |
| Defendant : | |

Plaintiff, Michelle States (hereinafter "Plaintiff" or "Ms. States"), by way of Complaint against the Defendant, alleges as follows:

**JURISDICTION**

1. Plaintiff resides at 23 Tremont Street, Irvington, NJ 07111.

2. Defendant Life Insurance Company of North America d/b/a CIGNA Group Insurance (hereinafter "Defendant" or "LINA") is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business being 1601 Chestnut Street, Philadelphia, PA, 19192, and is authorized to do business in the State of New Jersey.

3. Immediately prior to her disability, Ms. States was employed by Atlantic Health System ("Atlantic Health").

1

4. By virtue of her employment with Atlantic Health, Ms. States was eligible to participate in Group Policy number VDT-0980162 ("the LTD Policy" or "LTD Plan") (Exhibit A), issued by Defendant to Atlantic Health.

5. The LTD Policy is a group policy underwritten by Defendant. Under the terms of the LTD Policy, the policyholder is the Trustee of the Group Insurance Trust for Employers in the Services Industry. Atlantic Health is a subscriber and/or member and/or participant in the Trust for Employers in the Services Industry.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) in that the claims herein arise under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 et. seq.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) in that the Plaintiff resides in New Jersey.

## ESSENTIAL FACTS

8. Ms. States is a 55-year-old woman

9. Ms. States holds a bachelor's degree in Health Information Management. She began working for Atlantic Health in 2011 as a Laboratory Information Systems Administrator. In or about 2013, she became a System Analyst II, providing system level support of multi-user operating systems, hardware and software tools, including installation, configuration, maintenance and support of these systems.

10. According to the job description provided by Atlantic Health, Ms. States' responsibilities included:

- Investigating, planning, implementing, testing and debugging operating system software;
- Researching and recommending hardware and software development, purchase and use;
- Troubleshooting and resolving hardware, software and connectivity problems;

- Providing advanced technical assistance and maintenance support to department end users;
- Performing problem resolution and providing on-call support for computer/network systems.

11. While much of Ms. States' work was done sitting at a desk and using her computer and phone, she was also often involved in meetings and performed site visits at different departments. Consequently, she had to walk to other areas of the large hospital in which she worked to troubleshoot and fix computer issues. Resolving hardware problems also required physically working on computer set-ups which would require bending, lifting, and kneeling in order to troubleshoot connectivity problems.

12. The Policy defines "Disability" as follows:

*The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*

1. *Unable to perform the material duties of his or her Regular Occupation; and*
2. *Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to injury or Sickness, he or she is:*

1. *Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*
2. *Unable to earn 60% or more of his or her Indexed Earnings.* (Emphasis added)

13. Ms. States sustained significant injuries in a motor vehicle accident on or about December 19, 2014 while travelling as a passenger in the right front seat of a motor vehicle. The vehicle in which she was riding was struck in the rear by an intoxicated motorist, dragged along the divider in the road, and struck a second time on the side. Emergency responders had to extract Ms. States from the vehicle using the jaws of life and then transported her to Saint Joseph's Medical Center in Paterson, New Jersey where she was kept overnight.

14. Ms. States went back to work after the accident and hoped she would heal and return to normal functioning. She initiated physical therapy to address her injuries and mange her pain.

15. Despite physical therapy, Ms. States experienced protracted and severe pain in her shoulders, back and legs along with headaches. As a result, her primary care physician referred her to Board Certified Pain Management Specialist Jose Rojas Jr., M.D.

16. Ms. States underwent MRI's of the cervical and lumbar spine, which revealed posterior disc bulges at C3-C4 and C6-C7, pressing on the ventral thecal sac and partially effacing the anterior subarachnoid space; broad based herniations at C4-C5 and C5-C6, effacing the anterior subarachnoid space and abutting the ventral aspects of the cervical cord; anterolisthesis at L3-L4 secondary to bilateral facet joint hypertrophy; and disc bulge at L4-L5 indenting the central aspect of the thecal sac.

17. Dr. Rojas first evaluated Ms. States on March 12, 2015. She reported that she still had ongoing neck pains radiating down across both of her shoulders and into the right arm. Her overall pain score was 8-9 out of 10. She told him that her back pain was it was 7-8/10. She complained of "very still deep penetrating soreness across the lower lumbar spine".

18. Dr. Rojas' assessment, given her history, his examination and review of MRI results, was that Ms. States exhibited "ongoing evidence of both cervical and lumbar radiculopathy confirmed with radiological studies." He also noted that she had ongoing injuries to her knees which were consistent with derangement.

19. Ms. States reported pain in both of her knees and was having difficulty ambulating.

20. Ms. States underwent and MRI of both knees on April 1, 2015, which revealed bilateral knee derangement; tear of the left meniscus with thinning of the cartilage,

4

patellofemoral articulation, scarring, infrapatellar tendinitis; thinning of the cartilage of the right with patellofemoral articulation and osteochondral erosion of the medial patellar facet.

21. Ms. States underwent a left knee arthroscopy on January 11, 2016.

22. Ms. States' disabling pain persisted, with Dr. Rojas noting "significant degree of disc pathology at the lower lumbar spine." Consequently, Ms. States underwent both a cervical epidural injection and transforaminal epidural steroid injection.

23. Ms. States underwent a discogram of the lumbar spine on April 15, 2016, which revealed ossified ligamentum flavum and facet arthrosis with buckling ligamentum flavum at L2-L3; degenerative spondylolisthesis, bilateral facet arthrosis, buckling and ossified ligamentum flavum and annular bulge causing very severe stenosis at L3-L4; moderate to severe bilateral facet arthrosis, buckling ligamentum flavum and diffuse annular bulge at L4-L5; and degenerative retrolisthesis and bilateral facet arthrosis at L5-S1.

24. Throughout 2016, Ms. States experienced symptoms including low back pain; shooting sensations down her right lower extremity including pain along with tightening and cramping of the right leg and calf; difficulty with prolonged walking, standing and sitting; radiating neck pain; sharp electrical sensations going down her right upper extremity with numbness in her fingertips; and spasms down the right upper extremity.

25. Ms. States underwent a repeat cervical epidural steroid injection on May 19, 2016.

26. Given Ms. States' continued symptoms including evidence of bilateral lumbar neuropathy, Ms. States consulted with Board Certified spine surgeon Marc Cohen, M.D. After evaluating Ms. States on January 23, 2017, Dr. Cohen diagnosed her with lumbar discogenic instability, spondylolisthesis, stenosis, and lumbosacral radiculopathy. Noting that conservative pain management efforts had failed, he discussed the option of surgery with Ms. States.

5

27.     Ms. States' symptoms persisted through May of 2017. She experienced intractable pain sitting at her desk at work and her pain was impacting her activities of daily living. As a result, she chose to undergo surgery.

28.     Ms. States last worked on August 20, 2017.

29.     On August 21, 2017, Dr. Cohen operated on Ms. States and performed the following at the area of L3-L4: lumbar laminectomy; central and lateral recess decompression; posterior lateral discectomy; anterior lumbar interbody fusion; posterior lateral fusion; pedicle screw stabilization; and local bone graft.

30.     After operating on Ms. States, Dr. Cohen noted "clear evidence of lumbar instability with spondylolisthesis at L3-L4" with "clear evidence of severe central and lateral spinal stenosis much more significant than the pre-surgical testing." He noted "clear evidence of disc herniation impinging on the nerve root on the left at L3-L4."

31.     Ms. States remained hospitalized for four days following her surgery and was discharged on August 25, 2017.

32.     After returning home from the hospital on August 25, 2017, Ms. States noticed that her wound was leaking. The fluid leaking from her wound was cerebral spinal fluid. Additionally, Ms. States experienced severe headaches and constant vomiting.

33.     Ms. States returned for a postoperative visit with Dr. Cohen on September 5, 2017. Dr. Cohen identified an occult cerebral spinal fluid leak that he advised was a "significant complication." Dr. Cohen admitted Ms. States to the hospital.

34.     Ms. States underwent an open exploration and repair of her cerebrospinal fluid leak on September 6, 2017. Dr. Cohen performed the surgery and noted a dural tear. Ms. States remained hospitalized until September 15, 2017.

35. Following her dural repair surgery, Ms. States experienced significant and disabling residual symptoms, which now also included weakness in her legs, predominantly the left.

36. On October 27, 2017, Ms. States was seen by her primary care physician, Dr. Chomsky, who noted that she had just had her sutures removed from her second back surgery and would be starting physical therapy 3 times a week. She was walking with a cane and she complained of weakness in her left leg and back pain. On examination, the doctor noted her gait was with abnormal stride length, abnormal heel strike, abnormal stance, abnormal toe off, abnormal swing through, and inability to turn quickly.

37. Ms. States began physical therapy on October 31, 2017. Her physical therapist objectively evaluated her during her initial appointment and noted difficulties with lifting her leg onto the table, moving on the table and getting from a sitting to a standing position. Ambulation was noted to be "impaired" and she had a visual limp, she ambulated with no heel strike or minimal push off. Lumbar range of motion was limited by pain, spasm, and guarding. Flexion was 33% of normal, extension was 20% of normal, and right and left lateral flexion was 0% normal. Hip extension on both sides was 0% of normal and hip extensors demonstrated severe weakness bilaterally. Left knee flexors and extensors demonstrated severe weakness while right knee flexors and extensors demonstrated mild weakness. Hypertonicity was found in the lower back and pelvis. Tenderness was found in the right and left lower back and pelvis. Severe tenderness was noted in the posterior left and right lumbar spine and left and right posterior pelvis.

38. Dr. Cohen evaluated Ms. States on January 16, 2018 and noted, "limitations with respect to her ability to do things with respect to forward and lateral bending-type of activity,

difficulty lifting. She does have difficulty returning back to her normal recreational activity and she does have some intermittent difficulty sleeping."

39. Dr. Chomsky evaluated Ms. States on January 17, 2018 and noted that she was walking with a cane.

40. Ms. States continued to attend physical therapy, and the physical therapy notes from her visits continued to document impaired range of motion, abnormal gait and balance, pain, weakness, and stiffness.

41. Despite her surgeries and physical therapy, Ms. States continued to suffer with difficulty walking, abnormal gait, disabling pain, impaired range of motion, impaired balance, weakness, and stiffness.

42. Due to her protracted impairments, Ms. States applied for Long Term Disability benefits under the Policy.

43. On April 11, 2018, Dr. Cohen submitted a Physical Ability Assessment (PAA) to CIGNA indicating that Ms. States was not ready to return to work. She could perform the following activities only occasionally: sitting, standing, walking, reaching, fine manipulation, simple and firm grasp. She was to do no pushing or pulling.

44. On April 20, 2018, Ms. States' physical therapist, Joseph Guzzardi submitted a PAA also indicating that she could only perform activities occasionally (1/3 of a day). He added that she was "unable to perform work duties at this time."

45. After LINA received Ms. States' claim, in-house nurse Jody Eichenlaub, R.N. performed a paper review of Ms. States' file.

46. Nurse Eichenlaub stated that Ms. States' primary diagnoses were "lumbar spine issues" and "back and leg pain," which selectively minimized her specific and significant conditions including her status post-surgery at L3-4 on a herniated disc with significant

8

complications; severe spinal stenosis; spondylolisthesis; severe facet arthrosis and disc bulge at at L4-L5; lumbar radiculopathy; and disc herniations at C4-C5 and C5-C6.

47. Nurse Eichenlaub stated that there were no complications from Ms. States' surgery when the dural tear Ms. States suffered was a significant complication. Nurse Eichenlaub also cited a generic recovery time for Ms. States' surgery, which fails to account for Ms. States' personal experience, the complications following her surgery, or the findings that her physicians continued to note as she experienced chronic and significant residual impairments due to her conditions post-surgery.

48. On May 7, 2018, CIGNA's own Medical Director Anthony Watson, M.D. reviewed Ms. States' file. Dr. Watson stated that the record lacked imaging or diagnostic techniques to substantiate impairment, which is incorrect because the records objectively documents status post-surgery at L3-4 on a herniated disc; severe spinal stenosis; spondylolisthesis; severe facet arthrosis and disc bulge at L4-L5; lumbar radiculopathy; disc herniations at C4-C5 and C5-C6; and a litany exam findings including impaired range of motion, abnormal gait and balance, pain, weakness, and stiffness.

49. Dr. Watson incorrectly claimed that adequate time had elapsed for healing, without considering Ms. States' actual clinical course or her significant post-surgical complications.

50. Dr. Watson falsely categorized Ms. States' medical records by stating, "no impairment of bilateral upper or lower extremity or trunk motion, strength, or stability," despite the litany of objective radiologic and exam findings in the record.

51. Relying on Dr. Watson's report, LINA denied Mr. States' LTD benefits via letter dated May 10, 2018.

52. Dr. Cohen evaluated Ms. States on August 14, 2018 and noted that she continued to suffer with residual neurological issues and pain which prevented her from returning to work. He wrote in an office visit note, "The patient at this time has been told that I do not believe that she will be able to return back to gainful employment in light of the lumbar fusion type of surgery."

53. On November 2, 2018, Plaintiff, via counsel, filed an administrative appeal of LINA's adverse benefit determination.

54. Plaintiff's administrative appeal included a report from Dr. Cohen, who explained that Mr. States' spine has been structurally changed by removal of discs and insertion of a cage and screws. He explained that Ms. States' back condition has caused ongoing back pain and radiculopathy, which continue to disable her. Based on the substantial objective evidence of record, Dr. Cohen concluded that Ms. States was disabled from full time work.

55. The ERISA regulations provide that in the case of an administrative appeal pertaining to disability benefits, "the plan administrator shall notify a claimant…of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for such a hearing) require an extension of time for the processing of the claim." 29 C.F.R. § 2560.5031-1(h)(4)(i)(1)(i) and (h)(3)(i).

56. The ERISA regulations further provide, "If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period…The extension notice shall indicate the special circumstance requiring an extension of time and the date by which the plan expect to render the determination on review." Id.

57.     LINA's initial 45-day review period on Ms. States' appeal elapsed on December 17, 2018.

58.     On December 19, 2018, Plaintiff's counsel contacted LINA regarding LINA's failure to render a timely decision on Plaintiff's appeal.

59.     LINA responded to Plaintiff's counsel by claiming that it had accidentally sent a letter requesting an extension of time to Plaintiff herself rather that to Plaintiff's attorneys.

60.     Ms. States received a letter in the mail from LINA claiming an additional 45 days to render a determination on that claim. However, that letter was postmarked December 19, 2018 –two days after LINA's decision was due in this matter and the same day that Plaintiff's counsel contacted LINA seeking a determination.

61.     LINA's letter failed to set forth any special circumstances that would have entitled LINA to an additional 45 days to render a determination on Ms. States' claim.

62.     LINA failed to a render a determination on Ms. States' appeal until January 31, 2019.

63.     Via letter dated January 31, 2019, LINA upheld its decision to deny LTD benefits to Ms. States.

64.     On January 31, 2019, LINA sent a letter upholding its adverse benefit determination.

65.     LINA's January 31, 2019 letter relied upon the reports of a paid paper reviewer, orthopedist Ira Mitchell, M.D., who stated that "sitting tolerance is not significantly impacted as the fusion is healed" despite objectively documented impaired lumbar range of motion with flexion at 50% of normal and extension at 40% of normal; left lateral flexion at 20% of normal; right lateral flexion art 20% of normal; hip range of motion; reduced hip range of motion; and

reduced knee range of motion including extension at 0% of normal on both sides; muscle weakness in the hips and knees; spasm in the low back; and pain.

66. Dr. Mitchell's conclusions fail to account for the pain that totally disables Ms. States.

67. LINA's determination also relied upon the report of an occupational medicine specialist who opined that Ms. States is not disabled based upon comorbid conditions for which she did not claim disability in the first instance.

68. LINA's decision to uphold its denial of LTD benefits to Ms. States was arbitrary, capricious, unlawful and wrong.

69. Ms. States has exhausted her administrative remedies under the Policy and so brings this lawsuit pursuant to ERISA, 29 U.S.C. §1132 (a)(1)(B).

## AND FOR A FIRST CAUSE OF ACTION

70. Ms. States repeats and re-alleges each and every allegation set forth above at paragraphs 1-71 as if fully set forth herein again.

71. Ms. States is and has been continuously disabled within the meaning of the terms of Group Disability Policy No. VDT-0980162. As such, she is entitled to benefits under the Plan.

72. At all times relevant herein, LINA has failed to follow reasonable claims procedure as required by ERISA 503, 29 U.S.C. § 1133 and the accompanying regulations in that LINA has denied Ms. States' benefits despite her total disability due to her physical condition; disregarded Ms. States' objective and subjective evidence of disability; disregarded the findings and conclusions of her treating medical providers without a meaningful explanation for doing so; improperly discounted the disabling effect of her pain in contravention of the law; misrepresented the substantial medical evidence of record; and selectively reviewed the evidence in an attempt to justify a denial of Ms. States' claim.

73. Ms. States has exhausted her administrative remedies as required by the applicable Plans.

74. By virtue of the foregoing, LINA has breached the terms of the LTD Plan under which the Plaintiff, Michelle States, is a beneficiary and has violated the requirements of the Employee Retirement Income Security Act, 29 USC § § 1001 *et seq.,* 1132 and 1133 and the applicable regulations promulgated thereunder in a manner that is arbitrary and capricious and wrong.

75. In light of the foregoing, Plaintiff brings this lawsuit pursuant to ERISA, 29 U.S.C. §1132 (a)(1)(B).

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against LINA and enter an Order as follows:

1. Declaring Ms. States disabled within the meaning of the LTD Plan.
2. Ordering Defendant to immediately place Ms. States on claim under the LTD Policy and pay all retroactive benefits owed to date as well as benefits on an ongoing basis.
3. Awarding Plaintiff her costs of suit, including reasonable attorney's fees.
4. Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said policies of insurance.
5. Granting such further relief as this Court may deem just and proper.

<u>**AND FOR A SECOND CAUSE OF ACTION**</u>

76. Ms. States repeats and re-alleges each and every allegation set forth above at paragraphs 1-75 as if fully set forth herein again.

77. On November 2, 2018, Plaintiff, via counsel, filed an administrative appeal of LINA's adverse benefit determination.

78. The ERISA regulations provide that in the case of an administrative appeal pertaining to disability benefits, "the plan administrator shall notify a claimant...of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for such a hearing) require an extension of time for the processing of the claim." 29 C.F.R. § 2560.5031-1(h)(4)(i)(1)(i) and (h)(3)(i).

79. The ERISA regulations further provide, "If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period...The extension notice shall indicate the special circumstance requiring an extension of time and the date by which the plan expect to render the determination on review." Id.

80. LINA's initial 45-day review period on Ms. States' appeal elapsed on December 17, 2018.

81. On December 19, 2018, Plaintiff's counsel contacted LINA regarding LINA's failure to render a timely decision on Plaintiff's appeal.

82. LINA responded to Plaintiff's counsel by claiming that it had accidentally sent a letter requesting an extension of time to Plaintiff herself rather that to Plaintiff's attorneys.

83. Ms. States received a letter in the mail from LINA claiming an additional 45 days to render a determination on that claim. However, that letter was postmarked December 19, 2018 —two days after LINA's decision was due in this matter and the same day that Plaintiff's counsel contacted LINA seeking a determination.

84. LINA's letter failed to set forth any special circumstances that would have entitled LINA to an additional 45 days to render a determination on Ms. States' claim.

85. LINA failed to a render a determination on Ms. States' appeal until January 31, 2019.

86. Because LINA failed to render a timely determination on Ms. States' appeal, Ms. States' administrative remedies were deemed exhausted as of December 17, 2018, pursuant to the ERISA regulations, 29 C.F.R. §2530.503-1.

87. Because LINA did not render a timely decision on plaintiff's appeal, LINA's denial of disability benefits will be evaluated *de novo* by the Court.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter rule and enter judgment against LINA and enter an Order as follows:

1. Declaring that the *de novo* standard of review applies to this case.

2. Declaring Ms. States disabled within the meaning of the LTD Plan under said *de novo* standard of review.

3. Ordering Defendant to immediately place Ms. States on claim under the LTD Policy and pay all retroactive benefits owed to date as well as benefits on an ongoing basis.

4. Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

5. Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said policies of insurance.

6. Granting such further relief as this Court may deem just and proper.

## AND FOR A THIRD CAUSE OF ACTION

88. Ms. States repeats and re-alleges each and every allegation set forth above at paragraphs 1-87 as if fully set forth herein again.

89. In 2013, LINA entered into a Multi-State Regulatory Agreement (hereinafter "the Agreement," (Exhibit B) with the states of Maine, Ohio, Pennsylvania and California after

investigations by these states revealed regular improper claim handling by LINA with regard to insureds who resided in those states.

90. New Jersey subsequently signed the Agreement and became a participant thereto.

91. Plaintiff is a resident of New Jersey.

92. Per the Agreement, LINA stipulated that it would improve and reform its procedures to bring LINA's practices in line with proper claim handling protocol and the standards of the National Association of Insurance Commissioners.

93. LINA's conduct with respect to Ms. States' claim violates provisions of the Agreement, including the Agreement's stipulation that LINA will improve its procedures for evaluating medical information including claimant's reported symptoms and medical findings, and documenting conclusions.

94. By violating the Agreement, LINA has breached the contractual duties it owes to Ms. States thereunder.

95. By violating the Agreement, LINA has engaged in arbitrary and capricious conduct in violation of ERISA, 29. U.S.C. §§1001 *et seq.*, 1132 and 1133.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against LINA and enter an Order as follows:

1. Declaring Ms. States disabled within the meaning of the LTD Plan.

2. Ordering Defendant to immediately place Ms. States on claim under the LTD Policy and pay all retroactive benefits owed to date as well as benefits on an ongoing basis.

3. Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

4. Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said policies of insurance.

16

5. Granting such further relief as this Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Sara Kaplan-Khodorovsky, Esq. as trial counsel.

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

Dated: February 26, 2020        By: _____
                                Sara Kaplan-Khodorovsky
                                The Law Office of Barbara B. Comerford
                                45 Eisenhower Drive, Suite 280
                                Paramus, New Jersey 07652
                                Telephone: 201-485-8806
                                Fax: 201-485-7014
                                Attorneys for Plaintiff Michelle States

17